# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| Eric Lance Sabot, | ) | |
|---|---|---|
| | ) | **ORDER GRANTING RESPONDENT'S** |
| Petitioner, | ) | **MOTION TO DISMISS GROUND ONE** |
| | ) | |
| vs. | ) | |
| | ) | |
| Chad Pringle, Warden, | ) | Case No. 1:19-cv-033 |
| | ) | |
| Respondent. | ) | |

Before the court is a Motion to Dismiss Ground One filed by respondent on February 7, 2020. (Doc. No. 10). For the reasons set forth below, respondent's motion is granted.

## I. BACKGROUND

Petitioner Eric Lance Sabot ("Sabot") was charged in state district court with the offense of terrorizing in violation of N.D.C.C. §§ 12.1-17-04(1) and 12.1-32-01(4). (Doc. Nos. 9-1 and 9-2). The charge arose out of threats made by Sabot on May 8, 2016, to kill a Bismarck police officer, a judicial referee who had dismissed a small claims action that Sabot had filed against his father, and a state's attorney. (Doc. No. 9-2).[1]

Following a bench trial in state district court, Sabot was convicted and sentenced to a term of imprisonment of five years with two years suspended and three years of supervised probation. (Doc. No. 9-4). He appealed, asserting there was insufficient evidence to support his conviction.

---

[1] The events precipitating Sabot's outburst on May 8, 2016, formed the basis for civil rights action filed by Sabot with this court in May 2017. See Sabot v. State of North Dakota, et al., Case No. 1:17-cv-069 (D.N.D.). They are summarized in the court's order dismissing Sabot's civil rights on initial review pursuant to 28 U.S.C. § 1915A. See id. at Doc. No. 9-10.

1

(Doc. No. 9-5). The North Dakota Supreme Court summarily affirmed his conviction on December 7, 2017. (Doc. No. 9-9). The mandate issued on January 30, 2018. (Doc. No. 9-1).

Sabot filed an application for post-conviction relief with the state district court on February 1, 2018, asserting in relevant part the following:

> (5) "Denial of effective assistance of counsel; the Sixth Amendment . . . . I asked my lawyer Thomas Glass to include evidence from section 2 of my writ of certiorari but he did get this important evidence that I told him I needed to refute the States case or claims! Just by reading Dan Donlin's letter it is clear why it so important to my case in exonerating me!"
>
> (6) "Sixth Amendment . . . Judge Dann Greenwood, States attorney Ladd Erickson, and my own lawyer Thomas Glass. They pulled me into the Judges Chambers without the court reporter the day of my jury trial and threatened and coerced me to give up my right to a jury trial by threatening to destroy and alter my testimony if I didn't give into their demands!"
>
> (7) "Sixth Amendment . . . I did not get to call my 13+ witnesses in my favor?! Judge Dann Greenwood and states attorney Ladd Erickson never once asked me to call my witnesses?! It's my sixth amendment right to call the witnesses I have. Burleigh County court house and the State of North Dakota are corupt!

(Doc. No. 9-11) (errors in original).

On February 5, 2018, the State filed a response to Sabot's application. (Doc. No. 9-12). On April 4, 2018, it filed a motion for summary disposition of Sabot's application pursuant to N.D.C.C. §§ 29-32.1-06(2) and 29-32.1-09(1). (Doc. No. 9-13). Sabot responded:

> [¶6] <u>Mr. Sabot claims ineffective assistance of counsel.</u> Specifically Mr. Sabot alleges that he instructed his attorney to provide specific evidence to the court. The evidence that Mr. Sabot instructed to provide was either/both that Officer Luke Senger lied in his police reports where Officer Senger did not indicate that Mr. Sabot was charged [with] felony Aggravated Assault in 2008 and/or that Mr. Sabot's father stole his handgun and should be charged with theft. Mr. Sabot's attorney, however, was unable to offer the evidence. Thereby, Mr. Sabot was denied effective counsel.
>
> [¶7] <u>Mr. Sabot claims that he was coerced into a bench trial when it was the intention of Mr. Sabot to exercise his right to a jury trial</u>. Mr. Sabot alleges that

2

> Judge Greenwood, State's Attorney Ladd Erickson and Mr. Sabot's attorney, Thomas Glass, spoke with Mr. Sabot away from the court reporter and threatened to alter his testimony of Mr. Sabot exercised his right to a jury trial.
>
> [¶8] <u>Mr. Sabot claims that he was not provided the opportunity to present his witnesses</u>. Mr Sabot claims that he was never asked if he wanted to provide any witnesses during his trial.

(Doc. No. 9-14) (emphasis in original).

The state district court granted the State's motion and summarily dismissed Sabot's application, finding that he had failed to to raise any issues of material fact. Specifically, it opined:

> [2] Both in the initial Application for Post Conviction Relief and in the response to the State's motion for summary disposition Eric Lance Sabot set forth what the court would characterize as conclusory allegations. In the Application for Post Conviction Relief pursuant, Sabot merely states verbatim the language of N.D.C.C. 29-32.1-01(1) (a, d, e & h) and adds reference to the Fourteenth Amendment, i.e. equal protection. In addition, he asserts ineffective assistance of counsel. It should be noted both generally and in the context of his claim that evidence not previously presented exists, that Sabot speaks to that in a general sense only. However, he has not provided any affidavits or other admissible evidence in support of his application or in support of his response to the motion for summary disposition. Furthermore, many of Sabot's arguments were, or could have been, raised in his unsuccessful appeal to the North Dakota Supreme Court in <u>State v. Sabot</u>, 2017 ND 280, 094 N.W.2d 460.
>
> * * *
>
> [6] Whereas Sabot claims in his application that his attorney failed to call witnesses about whom he'd been advised, there are no affidavits which provide evidence about which those witnesses might have testified. Whereas Sabot claims the court and counsel made statements or took actions depriving him of a fair trial, no affidavits about the substance of such statements or actions, or transcripts of the proceedings to support such are provided.
>
> [7] What this Court recalls about the underlying criminal action, without the benefit of a transcript, is the State had moved the Court, in limine, to preclude the admission of certain testimony and/or evidence in the jury trial. However, the State offered to waive its objections to such evidence and give Sabot a full and unrestricted opportunity to present any evidence he wished to offer if Sabot would waive his right to a jury trial and agree to a bench trial. It is the Court's recollection that Sabot accepted that offer, waived his right to a jury trial and agreed to a bench trial.

3

> [8] Based upon Sabot's failure to support his application with competent, admissible evidence, the Court concludes that Sabot did not meet his minimal burden and has failed to raise an issue of material fact such that an Order for Summary Disposition is appropriate.

(Doc. No. 9-15). Its decision was affirmed by the North Dakota Supreme Court. (Doc. No. 9-20).

Sabot was paroled on September 26, 2018. (Doc. No. 11-20). His parole was terminated on December 29, 2019. (Id.). He is now on probation until September 25, 2021. (Id.).

Sabot initiated the above-captioned action *pro se* on February 11, 2019, with the submission of an application to proceed *in forma pauperis*, which this court granted, and a petition for a writ of habeas corpus in which he asserted four grounds for relief. (Doc. Nos. 1, 2, and 4).

On March 30, 2019, respondent filed a response to Sabot's habeas petition along with multiple exhibits. One of these exhibits was a document addressed to the United States Supreme Court in which Sabot listed the names of the witnesses he presumably wanted to call at trial: (1) Dr. Huber; (2) Tina; (3) Lucus Senger; (4) Lance J. Sabot; (5) Wayne Goter; (6) Dan Donlin; (7) Pat Heinert; (8) Richard Riha; (9) Randy Zeigler; (10) Wayne Stenehjem; (11) Michele Bring; (12) Dann Greenwood; and (13) Justin Driscoll. (Doc. No. 9-11, pp. 9 and 10.

Respondent also filed a motion to dismiss, to which Sabot filed a response April 10, 2019. (Doc. No. 14). On January 7, 2020, the court issued an order granting respondent's motion in part and denying all but Sabot's first ground for relief. (Doc. No. 19).

On February 7, 2020, respondent filed motion to dismiss Sabot's remaining ground for habeas relief. On February 11, 2020, Sabot filed a document captioned "Affidavit in Fact in Support in 2254 Petition." (Doc. No. 22). He also filed a "Motion in Support to Grant a Hearing in Support of Ground One of Section 2254 Petition." (Doc. No. 23). The court construes this affidavit and hearing request as his response to respondent's motion.

**II.     STANDARD OF REVIEW**

The law governing the scope of the court's review is set forth in the court's January 7, 2020, order.

**III.    DISCUSSION**

    **A.     Sabot's Claim for Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel and the inability to call witnesses form the core of Sabot's first ground for relief. Specifically, Sabot asserts:

> My 6th Amendment right to call my witnesses in my favor, and I did not get effective assistance of counsel
>
>                               * * *
>
> Ladd Erickson is admitting in his response to my Post Conviction Petition to my 6th Amendment Claim. I did not get to call my 14 witnesses on my witness list. I also received ineffective assistance of Counsel at my original hearing case #08-2016-cr-01385 by my Lawyer Thomas Glass and also at my direct appeal Supreme Court of North Dakota case #20170100 by Ladd Erickson's admission in his response to my post conviction petition at case #08-2018-cv-315!

(Doc. No. 2) (errors in original).

Respondent moves to dismiss this ground. First, he asserts that the state courts' application of law to the facts or lack thereof was objectively reasonable and that their findings are entitled to great deference. Second, he asserts that Sabot has presented nothing to demonstrate that his proposed witnesses would have had anything relevant to offer at trial. Third, he asserts that Sabot has presented nothing other than conclusory allegations that defense counsel's performance was deficient.

In the affidavit filed on February 11, 2020, Sabot states: (1) the trial judge, in an off-the record pretrial conference, "threatened to secretly preclude the evidence of the State of North

5

Dakota thefted [his] gun at a secret court hearing 08-2015-SC-343 . . . ;" (2) defense counsel advised him "to give up [his] right to a jury trial so that the secret evidence can be heard by the [trial judge] but not by the jury;" and (3) the State's Attorney failed to answer the sixth and seventh grounds for relief that he asserted in his state application for post-conviction relief. In the accompanying motion for a hearing Sabot asserts, among other things, that he was denied his right to a fair trial insofar as there was no court reporter present at his pretrial conference, he is actually innocent, defense counsel gave up on him, "the government in this case is secretly destroying [his] evidence in [his] favor," and local officials conspired to steal his handgun and are now conspiring to cover it up. (Doc. No. 23).

Under Strickland v. Washington, 466 U.S. 668 (1984), a defendant who claims ineffectiveness of counsel must demonstrate not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defendant. In regard to this analysis the Court explained in Strickland that:

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in [any particular] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

Id. at 697.

The test for deficient performance under the "first Strickland prong" is whether counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Id. at 688; Rompilla v. Beard, 545 U.S. 374, 380 (2005). When the issue involves a matter

of trial strategy, there is a strong presumption that the strategy was sound and was not ineffective assistance. See Bell v. Cone, 535 U.S. 685, 698–702 (2002).

Under the "second Strickland prong," prejudice is only shown when there is a "*reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" E.g., Woodford v. Visciotti, 537 U.S. 19, 22 (2002) (per curiam) (quoting Strickland, 466 U.S. at 694 and adding emphasis). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 23 (quoting Strickland, 466 U.S. at 694).

Judicial scrutiny of counsel's performance is highly deferential. Strickland, 466 U.S. at 687-88. Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." Boyd v. Ward, 179 F.3d 904, 914 (10th Cir.1999) (internal quotations omitted).

When a state court has addressed a petitioner's ineffective-assistance claims on the merits and applied the Strickland test, a federal court must accord the state court's determination the deference required by 28 U.S.C. § 2254(d). Rompilla, 545 U.S. at 380. Assuming there are no issues with respect to the state court's findings of fact, the federal court's review is limited to the determination of whether the habeas petitioner has met the burden of proving that "the state court applied Strickland to the facts of his case in an objectively unreasonable manner." Woodford, 537 U.S. at 25; see also Rompilla, 545 U.S. at 380. The Supreme Court has characterized the application of the Strickland standard through the prism of Antiterrorism and Effective Death Penalty Act as amounting to a "doubly deferential" standard of review. E.g., Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

The state district court did not apply the Strickland test when denying Sabot's claim for ineffective assistance of counsel. Rather, it dismissed the claim because it was vague, conclusory and devoid of any evidentiary support. Given these circumstances, its decision was imminently reasonable. See e.g., Jones v. Gomez, 66 F.3d 199, 205 (9tth Cir. 1995) (concluding that "conclusory suggestions" and "bald assertions" fell short of stating an ineffective assistance of counsel claim); United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir.1994) (ineffective assistance claim fails "where [petitioner's] allegations are merely conclusory in nature and without supporting factual averments"); Robinson v. Kelley, No. 5:17CV00031-BRW-JTR, 2018 WL 1997797, at *7 (E.D. Ark. Apr. 5, 2018), report and recommendation adopted, No. 5:17CV00031-BRW-JTR, 2018 WL 1996464 (E.D. Ark. Apr. 27, 2018) (opining that bare assertions, standing alone, are insufficient to warrant relief based on an ineffective-assistance-of counsel claim); cf. White v. United States, 930 F.Supp.2d 566, 569 (D. Del. 2013) (concluding that a petitioner's assertions of ineffective assistance were too vague and conclusory to sustain actionable claim under § 2255).

In sum, Sabot has presented nothing lending credence to the proposition that his attorney's performance was objectively unreasonable and that he suffered prejudice as a result. See Wing v. Sargent, 940 F.2d 1189, 1191 (8th Cir. 1991) ("[Petitioner's] speculation as to how the others on his list would have testified fails to meet his burden of proof that counsel's assistance was ineffective.") (citing other cases); see also Burton v. Dormire, 295 F.3d 839, 845 (8th Cir. 2002) (commenting on petitioner's failure to call as witnesses during the state postconviction hearing the witnesses he claimed his trial attorney was ineffective in failing to call); see e.g., Bragg v. Galaza, 242 F.3d 1082,1088 (9th Cir. 2001) (petitioner failed to establish prejudice where he did "nothing more than speculate that, if interviewed," the witness would have given helpful information);

Dows v. Woods, 211 F.3d at 486–87 (no ineffective assistance of counsel for failure to call witnesses where petitioner did not identify an actual witness, provide evidence that the witness would testify, or present an affidavit from the alleged witness); United States v. Harden, 846 F.2d 1229, 1231–32 (9th Cir.1988) (no ineffective assistance because of counsel's failure to call a witness where, among other things, there was no evidence in the record that the witness would testify); \sect plain United States v. Berry, 814 F.2d 1406, 1409 (9th Cir.1987) (appellant failed to meet prejudice prong of ineffectiveness claim because he offered no indication of what potential witnesses would have testified to or how their testimony might have changed the outcome of the hearing). Because Sabot has the burden of proof, the denial of Sabot's ineffective assistance claim based on insufficiency of the evidence is not an unreasonable application of Strickland.

### B. Evidentiary Hearing

Sabot has requested an evidentiary hearing. Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the following circumstances:

> (e) (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense[.]

None of these circumstances exist, here. Consequently, the court concludes that an evidentiary hearing is neither necessary nor appropriate.

## IV. CONCLUSION

Respondent's Motions to Dismiss (Doc. No. 20) is **GRANTED**, Sabot's Motion for Hearing (Doc. No. 23) is **DENIED**, and Sabot's habeas petition (Doc. No. 2) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 19th day of March, 2020.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court